UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

vs.                                              Case No. 21-mc-51049
                                              Honorable Nancy G. Edmunds

WILLIAM ELIAS D-1,

                Defendant.
_____/

## COMBINED MOTION AND BRIEF OF THE UNITED STATES FOR PRESENTENCE RESTRAINING ORDER TO PRESERVE ASSETS FOR RESTITUTION

Plaintiff, United States of America, by and through its undersigned counsel, moves for a restraining order under the All Writs Act (28 U.S.C. § 1651) to prevent the Defendant from dissipating his assets, including the residential real property identified below, of the value of the minimum amount of restitution the Defendant will be required to pay as part of the sentence to be imposed in this case, stating as follows:

### Introduction

The marital residence of William Elias ("Elias" or "Defendant") and his former spouse, Vicky Elias, was fraudulently conveyed to his daughter, Sydney Elias, and, in turn, almost immediately conveyed by Sydney to Jamie Ayoub,

Elias' sister, for little or no consideration. There is currently nothing to prevent Jamie Ayoub from conveying the property to a good faith purchaser for value, rendering the property and its value unavailable for payment of restitution.

1. On August 29, 2017, Defendant, William Elias, was indicted. Case No. 17-cr-20576; ECF No. 1. On October 10, 2018 entered into a Rule 11 Plea Agreement, ECF No. 63, PageID.462, attached hereto as Exh. 1. He pleaded guilty to Counts 2 and 7, which charged bank fraud and money laundering in violation of 18 U.S.C. §§ 1344 and 1957, respectively. *Id.*. The subject crimes were committed from on or about August, 2012 through on or about November, 2013, causing significant losses to the U.S. Department of Housing and Urban Development (HUD).

2. Restitution to victims of offenses committed by fraud or deceit is mandatory. 18 U.S.C. § 3663A(c)(l)(A)(ii). Restitution must be ordered "to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(l)(A).

3. The restitution order to be imposed against Elias at sentencing may be enforced against all property or rights to property he possesses, with the exception of certain property exempted by statute, which will be nominal or largely inapplicable in this case; and, with the exception of certain dollar limitations for

property being garnished that is not being garnished at present. 18 U.S.C. §§ 3613(a) and 3613(f).

4. Residential real property commonly known as 40670 Deer Pines Dr., Canton, MI ("Deer Pines" or "the Property"), legally described as:

> Unit 49. DEER CREEK CONDOMINIUM, a Condominium according to the Master Deed recorded in Liber 34501, on Pages 1 through 59, both inclusive, Wayne County Records, as designated as Wayne County Condominium Subdivision Plan No. 620, together with rights in general common elements and limited common elements, as set forth in the above-described Master Deed and all amendments thereto; and as described in Act 59 of the Public Acts of 1978, as amended (Sidwell Number 71-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-000)

may be the subject of the restitution order. Plea Agreement, ECF No. 63, PageID.473-474, attached as Exhibit 2.

5. Defendant Elias' sentencing is currently scheduled for October 4, 2021 at 10:00 a.m., having been rescheduled from April 26, 2021. The Defendant and the Government have not agreed to the amount of restitution payable to HUD to be determined at sentencing. *Id.*, ECF No. 63, PageID.472, attached as Exhibit 3. Upon information and belief that amount will be exponentially greater than the value of Deer Pines.

6. Deer Pines was the marital residence of William and Vicky Elias. According to the Defendant it was valued at $350,000 in 2019 and did not appear to be mortgaged.

7.      Elias was awarded Deer Pines outright in his July 19, 2017 Consent Judgment of Divorce (Exh. 4 at 12). The Judgment specified that his three daughters, including Sydney, would reside with their mother, Vicky (*id*. at 3), but that Elias would share custody, presumably, at the Deer Pines residence when that occurred. The Judgment said nothing about a later conveyance to Sydney, or a retention of a lien by Vicky Elias to secure payment of child support arrearage. The Judgment also stated it was a final adjudication of all claims by and between the parties with regard to the property settlement. *Id.* at 21. The conveyance of Deer Pines to Sydney subsequent to the Judgment was not bargained for in the context of the divorce.

8.      A February 7, 2019 stipulated order of the Wayne County Circuit Court amending the divorce judgment, Exh. 5, stated that Elias and Vicky, his former wife, would convey the property to their daughter, Sydney. A court order was unnecessary to effect the transfer. By means of a February 6, 2019 Quit Claim Deed recorded on February 11, 2019, Exh. 6, they transferred the property to Sydney for stated nominal consideration of $1.00. There was no intervening deed where Vicky conveyed her interest in Deer Pines to William Elias, the property he was awarded under the 2017 Judgment. That notwithstanding, at best Vicky Elias was an interest holder in name only when Deer Pines was transferred to Sydney.

9.  In an April 7, 2021 interview, Vicky Elias stated that Deer Pines had not been conveyed to the Defendant at the time of the Divorce Judgment, because he had not paid her an agreed-upon cash payment, nor had he conveyed two parcels of realty to her as required under their Property Settlement. Once she received the cash payment and the real estate conveyances, she stated that she did not care what William Elias did with the Deer Pines property, including whether he chose to keep the property or convey it to anyone else, including her daughter, Sydney. She received the cash payment and the real estate conveyances from William Elias before the February 6, 2019 Quit Claim Deed to Sydney was executed.

10. Under a separate February 7, 2019 order, Vicky Elias was granted a lien against Deer Pines for any child support arrearage. Exh. 7. Upon information and belief, that lien, assuming it is valid, secures payment of only a modest amount of unpaid support in relation to the value of Deer Pines. The property appears otherwise unencumbered except, possibly, for some unpaid real property taxes.

11. By means of a February 11, 2019 Quit Claim Deed recorded on February 12, 2020, Exh. 8, Sydney transferred Deer Pines to Jamie Ayoub, her aunt and the Defendant's sister, for the stated consideration of $1.00. This subsequent transfer is also subject to being set aside as fraudulent under 28. U.S.C.

§ 3307(b)(2) because Jamie Ayoub was not a "good faith transferee who took for value."

12. On March 1, 2019, Deer Pines was forfeited to Wayne County for non-payment of property taxes. Exh. 9. On January 7, 2020, William Elias redeemed the property by paying back taxes of $6,290.10 to Wayne County. Exh. 10. Upon information and belief, Elias lives at Deer Pines with Co-Defendant, Kimberly Doren. Presumably, his youngest daughter, Arianna, age 14, resides at Deer Pines some of the time. His other two daughters are over 18. Though he is not the record owner, and although he claims he and Ms. Doren pay $1,000 per month rent to Jamie Ayoub without a written agreement, William Elias appears to be the beneficial owner and Jamie Ayoub his nominee, providing additional grounds to restrain and preserve Deer Pines for restitution. However, determining whether Jamie is a nominee and whether Elias is a beneficial owner is not necessary to bring an action to set aside the transfers to Sydney and Jamie as fraudulent.

13. Under 28 U.S.C. § 3304, transfers may be set aside as fraudulent before or after the criminal judgment that gives rise to the restitution debt is entered. The transfer(s), including the subsequent transfer by Sydney to Jamie, may be set aside as constructively fraudulent if, in sum: the transferor did not receive reasonably equivalent value for the transfer; and, the transferor believed or

6

reasonably believed that he would incur debts beyond his ability to pay as they became due, e.g., upon entry of a substantial, anticipated restitution order.

14. Upon information and belief, by the time of the transfer of Deer Pines to Sydney in February of 2019 for little or no consideration, or shortly thereafter, William Elias had divested himself of all of his real properties and reportedly had a negative net worth.

15. On or around the time of the transfer, "he believed or reasonably should have believed that he would incur [] debts beyond his ability to pay as they became due," 28 U.S.C. § 3304(b)(1)(B)(ii), because he knew he was under Federal investigation since the execution of a search warrant on or about February 27, 2013, Opinion and Order Denying Defendant's Motion to Dismiss Indictment, ECF No. 48, PageID.368 (Exh. 11), and could anticipate having to repay substantial sums as restitution.

16. In the alternative, actual, fraudulent intent under § 3304(b)(1)(A) could also be pleaded, citing "badges of fraud" listed under § 3304(b)(2), including: successive transfers to insiders, Elias' daughter, Sydney, and his sister, Jamie; Elias' retention of possession by continuing to live at Deer Pines; initial concealment of the transfer because it is unclear when he actually reported the February 6, 2019 transfer to Sydney to the Court; prosecution (suit) having commenced before the transfer, Elias having been indicted on August 29, 2017

(ECF No. 1); nominal consideration for the transfer(s); and, the transfer(s) being made shortly before–or in contemplation of–the imposition of a substantial restitution order.

17. The government contends the transfers of Deer Pines described above were fraudulent and should be aside so that the property can be liquidated and the net proceeds applied to reduce Elias' restitution obligation.

18. Currently, there is nothing to prevent Jamie Ayoub from refinancing or selling Deer Pines to a bona fide purchaser for value, rendering Deer Pines irretrievable and depriving the victim(s) of Elias' fraudulent scheme of the net sale proceeds.

19. As set forth in the accompanying brief in support of this motion, numerous federal courts have recognized the authority of a district court to restrain a defendant's assets pending sentencing in order to ensure that such assets are preserved for restitution.

20. The Defendant's presentence transfer to place Deer Pines beyond the Court's reach constitutes grounds to restrain his property and property rights, including Deer Pines, under the accompanying restraining order.

21. Defendant Elias and other parties with proper standing will be afforded the opportunity to object to or otherwise challenge the terms of the

Restraining Order prior to its issuance. If issued as requested, the Restraining Order will remain in effect until further order of the Court.

22.   On August 6, 2021, at approximately 3:00 pm, the undersigned counsel contacted Henry Scharg, counsel for Elias, via telephone to explain the nature of this motion, and to request concurrence pursuant to LR 7.1 (E.D. Mich.). On August 10, 2021, counsel for Elias contacted AUSA Brandon Helms and declined to concur in this motion.

23.   The United States requests entry of the accompanying order restraining Elias's property and rights to property to preserve the property for restitution by, among other things, preventing Deer Pines from being transferred again before a restitution order is entered. Deer Pines has a value far less that the anticipated restitution order; totaled losses to Freddie Mac and Fannie Mae estimated at $5,139,331. Plea Agreement, ECF No. 63, PageID.468 (Exh. 12). Any additional restraint of Elias' property and property rights will be limited to the value necessary to satisfy the restitution order.

## BRIEF IN SUPPORT

### Issue Presented

Should the accompanying order restraining Defendant's assets for the purpose of preserving them for restitution be entered prior to sentencing?

### Controlling Authorities

*Statutes*

18 U.S.C. §§ 3613(a)

18 U.S.C. §§ 3613(f)

18 U.S.C. § 3663A(a)(1)

18 U.S.C. § 3663A(c)(l)(A)(ii)

18 U.S.C. § 3664(f)(l)(A)

28 U.S.C. § 1651

*Cases*

*Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 123 S.Ct. 366 (2002)

*United States v. Abdelhadi*, 327 F.Supp.2d 587 (E.D.Va.2004)

*United States, v. Catoggio*, 698 F.3d 64 (2d Cir. 2012)

*United States v. Fellows,* No. 8:19CR28, 2019 WL 2371715 (D. Neb. June 5, 2019)

*United States v. Goldfein,* No. 17-mc-51146 (E.D. Mich. Aug. 28, 2017)

*United States v. McDaniel*, 398 F.3d 540 (6th Cir. 2005)

*United States v. Nazzal, et al,* No. 13-mc-51028 (E.D. Mich. June 27, 2013)

*United States v. New York Tel. Co.*, 434 U.S. 159, 98 S.Ct. 364 (1977)

*United States v. Ross*, 1993 WL 427415 (S.D.N.Y. 1993) (unpublished)

*United States v. Runnels*, 335 F.Supp.2d 724 (E.D.Va. 2004)

*United States v. Sullivan*, 2010 WL 5437243 (E.D.N.C. Nov. 17, 2010)

*United States, v. Yielding*, 657 F.3d 722 (8th Cir. 2011)

## Statement of Facts

The factual allegations in the Motion are incorporated by reference as though fully stated herein.

## Introduction

The Defendant transferred the Deer Pines property to his daughter, Sydney, after he pled guilty and before he was first scheduled to be sentenced on May 13, 2019. She in turn transferred it almost immediately thereafter to Jamie Ayoub, the Defendant's sister and her aunt. There is no assurance that between now and sentencing as rescheduled for October 4, 2021 that the Defendant's sister, Jamie Ayoub, acting individually or in concert with the Defendant or others, will not attempt to conceal or disguise, transfer or liquidate Deer Pines to place it beyond the Court's reach, rendering it unavailable for restitution. Similarly, given the

presumed fraudulent transfer of Deer Pines, there is no assurance that any other assets the Defendant has will be preserved for restitution.

The presumption for pre-sentence restraint to preserve the Defendant's property interests and rights for restitution is in the Government's favor.

## Discussion

Restitution to victims of offenses committed by fraud or deceit is mandatory. 18 U.S.C. §§ 3663A(a)(1) and (c)(l)(A)(ii). Restitution must be ordered "to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(l)(A); *United States v. McDaniel*, 398 F.3d 540, 554 (6th Cir. 2005) (the Court affirming that, by statute, restitution is mandatory for bank fraud and without regard to the defendant's ability to pay) (citations omitted).

Upon sentencing, the restitution order imposed against Defendant Elias will be enforceable against all property or rights to property he has, with the exception of certain property exempted by statute, which will be nominal or largely inapplicable in this case, and with the exception of certain dollar limitations for property being garnished, are also largely inapplicable. 18 U.S.C. §§ 3613(a) and 3613(f). To the extent possible, Elias' property and property rights should be preserved for restitution by means of the accompanying, proposed restraining order

prior to sentencing until judicial determinations can be made regarding the liquidation and application of the assets to the restitution obligation.

The Court is empowered to authorize such restraint.

In *United States, v. Catoggio*, 698 F.3d 64, 68 (2d Cir. 2012), the Court of Appeals for the Second Circuit upheld the district court's restraint of the defendant's assets under the All Writs Act, 28 U.S.C. §1651 to preserve them for restitution in anticipation of [re]sentencing.

With respect to its authority under the All Writs Act, the Court stated: "The All Writs Act enables federal courts to 'issue all writs necessary and appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.' 28 U.S.C § 1651(a). The broad power conferred by the All Writs Act is aimed at achieving the ''rational ends of law." Thus, courts have significant flexibility in exercising their authority under the Act." *Id*. at 67 (Supreme Court citations omitted).

Restraint of assets pursuant to the All Writs Act prior to the entry of an almost certain restitution order is appropriate because there are no other apparent legal alternatives, i.e., applicable statutes authorizing the restraint of assets prior to sentencing to preserve them for restitution. See *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 34, 123 S.Ct. 366, 371(2002) ("[I]nvocation of the All Writs Act[] does not dispense with need for compliance with statutory requirements.").

13

The *Catoggio* Court noted that the courts that had addressed this issue in the past, inter alia, in the Second, Fourth and Eighth Circuits, had uniformly held that such restraint was permissible under the All Writs Act. 698 F.3d at 67 (citations omitted).

Indeed, "if a trial court does not have authority to order a defendant, post-conviction but prior to sentencing, not to dispose of his assets, then the court is without any meaningful ability to impose a proper sentence under the guidelines and to fulfill the intent and mandate of Congress that a financially able defendant pay [restitution]." *United States v. Sullivan*, 2010 WL 5437243, at *6 (E.D.N.C. Nov. 17, 2010) (Exh; 13) (quoting *United States v. Gates*, 777 F. Supp. 1294, 1296 n.7 (E.D. Va. 1991). A similar view supporting pre-sentence restraint was expressed around the same time in *United States v. Ross,* 1993 WL 427415 at *1 (S.D.N.Y. 1993) (unpublished) ("There is no logic to the position that the Court is powerless to enter a restraining order after a jury has found a defendant guilty of participating in a large-scale fraud simply because sentencing has been delayed so that a presentencing report may be prepared") (Exh. 14).

In *United States, v. Yielding*, 657 F.3d 722, 727 (8th Cir. 2011), under the All Writs Act, the Court of Appeals for the Eighth Circuit upheld the district court's restraining order involving the proceeds of a settlement check from an unrelated civil litigation in which the defendant had an interest, to preserve the

14

proceeds for restitution. The Court stated: "We agree that a sentencing court has jurisdiction to enforce its restitution order and may use the All Writs Act when necessary and appropriate, to prevent the restitution debtor from frustrating collection of the restitution debt." *Id.* (in support citing, inter alia, 28 U.S.C. § 3202(a) (court may issue writs under the All Writs Act when necessary to support enforcement of a judgment); *United States v. Abdelhadi*, 327 F. Supp. 2d 587, 598-601 (E.D. Va.2004) (statutory mechanisms to enforce restitution order not "instantaneously available" and do not ensure availability of assets for restitution); *United States v. Runnels*, 335 F. Supp. 2d 724, 725-726 (E.D. Va. 2004) (finding the defendants were "diverting and concealing assets through corporations to avoid paying restitution" and issuing a restraining order against them and all persons in concert with them under the All Writs Act, 28 U.S.C. § 1651)). Federal courts have continued to apply the All Writs Act in more recent decisions, albeit unpublished, to authorize restraining orders to preserve assets for restitution. *E.g., U.S. v. Fellows*, No. 8:19CR28, 2019 WL 2371715 (D. Neb. June 5, 2019) (Exh, 15). Like orders have been issued in this district. *E.g.*, *United States v. Nazzal, et al*, No. 13-mc-51028, Order Granting in Part Motion for Restraining Order (ECF No. 10) (E.D. Mich. June 27, 2013) (Exh, 16); *United States v. Goldfein*, No. 17-mc-51146, Stipulated Restraining Order (ECF No. 10) (E.D. Mich. Aug. 28, 2017) (Exh.17).

The *Sullivan* court had found that the defendant was dissipating or attempting to dissipate assets prior to sentencing and the entry of a restitution order with the help of a third party who was acting as his attorney. Exh. 13, 2010 WL 5437243, at *7. The court noted that its power to restrain assets "include[d] the power to enjoin or bind non-parties." *Id*., at* 5 (citations omitted).

In that regard, *Sullivan* relied principally on *United States v. New York Tel. Co.*, 434 U.S. 159, 98 S. Ct. 364 (1977), which states: "The power conferred by the [All Writs] Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice." 434 U.S. at 174, 98 S. Ct. at 373 (citations omitted).

Accordingly, the proposed order restraining assets encompasses individuals and entities besides the Defendant, principally his daughter, Sydney Elias, and his sister, Jamie Ayoub. The proposed restraining order, however, extends to all parties acting in concert with the Defendant to conceal, transfer or dissipate any assets that would otherwise be available to satisfy the restitution order. The proposed restraining order provides for objections to the order by any party upon 48 hours' notice to other parties.

In this case, the conduct being proscribed is sufficiently identified and described, and comprehensible, as evident from the language in the accompanying

proposed order. "[I]njunctive relief under the All Writs Act need not rigidly comply with [Fed. R. Civ. P] 65's prescriptions [for injunctions and restraining orders] so long as the injunction is 'specific and definite enough to apprise those within its scope of the conduct that is being proscribed.'" *United States v. Yielding,* 657 F.3d at 727 (citations omitted).

## Conclusion

Based upon the foregoing, the United States requests that the Court exercise its authority under the All Writs Act and enter the accompanying order restraining the Defendant's assets with a value of $5,139,331 or less in the scope and manner specified therein; representing the total, calculated losses incurred by Freddie Mac and Fannie Mae. Plea Agreement, ECF No. 63, PageID.468 (Exh. 12).

Respectfully submitted,

SAIMA L. MOHSIN
Acting United States Attorney

Dated: August 10, 2021

s/ T.N. Ziedas
T.N. ZIEDAS (P34653)
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9573
peter.ziedas@usdoj.gov